IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ARSA DISTRIBUTING, INC.,<br>    Plaintiff-Counter Defendant,<br><br>v.<br><br>SALUD NATURAL MEXICANA SA de CV,<br>    Defendant-Counter Claimant. | Case No. 1:22-cv-1367 |

## MEMORANDUM OPINION

This is a trademark dispute between Plaintiff-Counter Defendant Arsa Distributing, Inc. ("Arsa") and Defendant-Counter Claimant Salud Natural Mexicana SA de CV ("Salud") over the rights to the mark EUCALIN for certain products, including nutritional supplements.[1] The parties have filed cross motions for summary judgment, which have been fully briefed and argued and are therefore now ripe for disposition. For the reasons that follow, Salud's motion for summary judgment must be denied in full and Arsa's motion for summary judgment must be granted in part and denied in part. Arsa's motion must be granted in part insofar as Salud's status as a specially designated narcotics trafficker ("SDNT") does not provide a basis for finding excusable nonuse of the EUCALIN mark by Salud during the period Salud was designated an SDNT. In all other respects, Arsa's motion for summary judgment is denied. The remaining issues involve disputed questions of material fact and will therefore be resolved in the course of a bench trial to be scheduled.

---

[1] The trademark applications in dispute involve use of the EUCALIN mark in connection "[p]harmaceutical products, namely, vitamin supplements, nutritional supplement made with a syrup with jelly base, honey base, and with a mixture of plants with propolis base, and herbal remedies in the nature of herbal supplements," as well as "[h]erbal supplements; [n]utritional supplements; [and] [v]itamin supplements." United States Patent and Trademark Office ("USPTO") Record of Salud's Application No. 86/779,422 (Dkt. 21-W); USPTO Record of Salud's Application No. 87/638,836 (Dkt. 21-X).

1

## I.

Rule 56(a), Fed. R. Civ. P., provides that a party may seek summary judgment on all or any part of a claim. Accordingly, where appropriate, a court may resolve all or any part of a claim at the summary judgment stage. This memorandum opinion resolves only the question of whether Salud's status as an SDNT constitutes excusable nonuse of the mark EUCALIN for the purpose of determining abandonment. Accordingly, the undisputed facts listed here focus chiefly on the facts material to that issue.

- Arsa is a closely held Texas corporation.

- Salud is a foreign corporation based in Mexico.

- Beginning in 1999 and continuing to 2008, Salud manufactured and supplied a dietary supplement to Arsa pursuant to an unwritten contractual relationship. Arsa thereafter sold this product in the United States using the unregistered trademark EUCALIN.

- Before October 2008, neither Arsa nor Salud successfully registered the trademark EUCALIN in the United States. In August 2002, Salud filed a design mark application for use in connection with nutritional supplements, but Salud abandoned this application in 2003. *See* USPTO Record of Application Serial No. 78/156,970 (Dkt. 21-K). In October 2006 Salud filed an application for the word mark EUCALIN for use in connection with nutritional supplements, but Salud again abandoned this application for the word mark EUCALIN. *See* USPTO Record of Application Serial No. 77/010,013 (Dkt. 21-L).

- In October 2008, the United States Department of the Treasury's Office of Foreign Asset Control ("OFAC") designated Salud as an SDNT because OFAC determined Salud was part of the "financial and supply network" for the drug trafficking operations of the Amezcua Contreras Organization. *See* Treasury Dep't Press Release dated Oct. 2, 2008 (Dkt. 21-4). According to OFAC, the Amezcua Contreras Organization created a "network of associates producing methamphetamines for distribution in the United States" and controlled "a network of businesses in Mexico that supplie[d] precursor materials for methamphetamine production." *Id.* In relation to this network, OFAC designated Salud as an SDNT under the Foreign Narcotics Kingpin Designation Act ("the Kingpin Act"), codified at 21 U.S.C. § 1901 *et seq.*

- As a result of being designated an SDNT for its participation in illicit drug trafficking, Salud was banned by operation of law from conducting any commercial business in the United States beginning in October 2008. As a sanction for engaging in drug trafficking, during the period that Salud was designated an SDNT, United States law banned Salud

from selling or distributing any products in the United States.[2] 21 U.S.C. § 1904(c)(1); Treasury Dep't Press Release dated Oct. 2, 2008 (Dkt. 21-4).

- OFAC further determined that Salud's president, Maria Teresa Tirado-Diaz, and most of Salud's owners, including Telesforo Baltazar Tirado Escamilla, Luis Alfonso Tirado Diaz, and Rolando Tirado Diaz, were part of the "financial and supply network" for the Amezcua Contreras Organization. Treasury Dep't Press Release dated Oct. 2, 2008 (Dkt. 21-4); *see also* Salud Financial Interest Disclosure Statement (Dkt. 12); Declaration of Maria Teresa Tirado-Diaz (Dkt. 18-2).

- During the period Salud was designated an SDNT, Salud did not sell goods under or in connection with the mark EUCALIN in United States commerce or to customers in the United States. In fact, Salud has never directly sold goods under or in connection with the mark EUCALIN in United States commerce or to customers in the United States.

- In October 2008, soon after Salud was banned from conducting business in the United States, Arsa filed a trademark application for the mark EUCALIN for use in association with dietary and nutrition supplements. Arsa's application matured into a registered trademark on February 1, 2011. Later, however, on September 8, 2017 after Arsa failed to file the requisite declaration of continued use pursuant to 15 U.S.C. § 1058 Arsa's trademark for EUCALIN used for dietary supplements was cancelled. *See* USPTO Record of Arsa's Mark Serial No. 77/598,565 / Registration No. 3,912,708 (Dkt. 21-F).

- During the period that Salud was a designated as an SDNT, Arsa sold dietary and nutritional supplements using the EUCALIN mark in the United States.

- It appears that Salud requested removal from the SDNT list on May 5, 2010. *See* Letter from OFAC dated April 7, 2011 (Dkt. 18-11). Five years later, by letter dated May 22, 2015, OFAC removed Salud from the SDNT list, thereby lifting the statutory ban on Salud's participation in United States commerce. The May 22, 2015 letter in which OFAC informed Salud's attorneys that Salud was being removed from the SDNT list did not indicate that the removal was because Salud was innocent of supporting the drug trafficking operations of the Amezcua Contreras Organization or that placing Salud on the list was a mistake. Instead, in the letter, OFAC merely stated that Salud "no longer [met] the criteria for designation." *See* Letter from OFAC dated May 22, 2015 (Dkt. 18-4).

---

[2] The parties dispute whether the SDNT sanction on Salud was for a definite or indefinite time period. Arsa argues that the ban was for an indefinite period, whereas Salud argues that it was for a specified time. Nothing in the Kingpin Act suggests that the sanction on Salud was imposed for a specified period of time and Salud provides no basis in law or fact for its contention that the sanction imposed on Salud as an SDNT was for a then-specified period of time. In any event, whether the sanction on Salud as an SDNT was for a definite or indefinite time is not material to the specific issue treated in this Memorandum Opinion, namely whether Salud's status as an SDNT provides a basis for finding excusable nonuse of the EUCALIN mark during the period Salud was designated an SDNT, as the TTAB did.

- On October 6, 2015, Salud filed an application for the word mark EUCALIN for use in connection with various pharmaceutical products including nutritional supplements.³ *See* USPTO Record of Salud's Application No. 86/779,422 (Dkt. 21-W). On October 19, 2017, Salud filed a second application for a design mark involving EUCALIN for use in connection with various products including nutritional supplements.⁴ *See* USPTO Record of Salud's Application No. 87/638,836 (Dkt. 21-X).

- Arsa filed oppositions to Salud's pending applications (Serial Nos. 86/779,422 and 87/638,836) for the EUCALIN word and design marks. The oppositions alleged that Salud's applied-for marks were likely to cause confusion with Arsa's EUCALIN mark because of the near identity of the marks and the identical or highly related nature of the associated goods. *See* Notice of Opposition 91/240,240 (Dkt. 21-R) at ¶ 21, Notice of Opposition 91/243,700 (Dkt. 21-S) at ¶ 45. Arsa's oppositions further alleged that Arsa had priority based on Arsa's longtime exclusive use of the EUCALIN mark in United States commerce, as well as Salud's failure to use the EUCALIN word or design mark in the United States since at least 2008. *See* Notice of Opposition 91/240,240 (Dkt. 21-R) at ¶ 16, Notice of Opposition 91/243,700 (Dkt. 21-S) at ¶ 35. The Trademark Trial and Appeal Board ("TTAB") consolidated the two oppositions into a single case on November 5, 2018. *See* Order Consolidating Oppositions (Dkt. 21-T). Arsa's oppositions give rise to the instant 15 U.S.C. § 1071(b) action.

The TTAB rejected Arsa's oppositions to Salud's applications for the mark because the TTAB found (1) that Salud had priority in the mark under Salud and Arsa's 1999–2008 distribution arrangement and (2) that Salud had not abandoned the mark. *See* TTAB Decision (Dkt. 1-A). Specifically, the TTAB found that Salud had not abandoned the EUCALIN mark (i) because Salud's nonuse from 2008–2015 was "excusable" given that Salud, as an SDNT, was prohibited by law from engaging in United States commerce and (ii) because since 2015, Salud has shown an intent to resume usage of the mark. *Id.* at 28–32. In response to the TTAB's ruling

---

³ Specifically, Salud's application was for use of the mark in connection with "Pharmaceutical products, namely, vitamin supplements, nutritional supplement made with a syrup with jelly base, honey base, and with a mixture of plants with propolis base, and herbal remedies in the nature of herbal supplements." *See* USPTO Record of Salud's Application No. 86/779,422 (Dkt. 21-W).

⁴ Specifically, Salud's application was for use of the mark in connection with "Herbal supplements; Nutritional supplements; Vitamin supplements." *See* USPTO Record of Salud's Application No. 87/638,836 (Dkt. 21-X).

in favor of Salud, Arsa brought this action pursuant to § 1071, which allows trademark applicants dissatisfied with the TTAB's decision either to appeal to the Court of Appeals for the Federal Circuit or to file an action in district court. Arsa, not satisfied with the TTAB decision, elected to sue in this district court pursuant to § 1071(b).

## II.

Where, as here, a plaintiff files an action in district court pursuant to 15 U.S.C. § 1071(b), "not only is the record of the PTO admissible into evidence on the motion of either party, but the parties may also conduct discovery and submit further testimony and other new evidence." *Shammas v. Focarino*, 784 F.3d 219, 225 (4th Cir. 2015). Here, the parties have not submitted the PTO record into evidence, but they have conducted discovery and they have submitted further testimony and introduced documents into the record, some of which were not provided to the TTAB.[5]

When new evidence is presented in a § 1071(b) proceeding, the Fourth Circuit has made clear that district courts must conduct a *de novo* review, in contrast to the more deferential substantial evidence standard applied when a party appeals a TTAB decision to the Court of Appeals for the Federal Circuit pursuant to § 1071(a). *Swatch AG v. Beehive Wholesale, LLC*, 739 F.3d 150, 155 (4th Cir. 2014). In a § 1071(b) case, the "district court must conduct a de novo review of the entire record, including the evidence before the TTAB and any new evidence submitted by a party." *Belmora LLC v. Bayer Consumer Care AG*, 987 F.3d 284, 298 (4th Cir.

---

[5] Included in the new material is a declaration from Rosanna Arras, president and owner of Arsa (Dkts. 21-Y), which was provided to, but not considered by, the TTAB because the declaration lacked an appropriate certificate of translation. Also included in this material not provided to the TTAB is a declaration of Maria Teresa Tirado-Diaz, president of Salud (Dkt. 9-A), excerpts from a deposition of Ms. Tirado-Diaz (Dkt. 21-A), Salud's responses to interrogatories and requests for admission (Dkts. 21-O, 21-P, 21-U, 21-V, 25-E, 25-F, 37-C, 37-D), and a supplemental declaration from Ms. Arras (Dkt. 33-F).

2021) (quoting *Kappos v. Hyatt*, 566 U.S. 431, 444 (2012)). Accordingly, this opinion reviews the matter *de novo* without deference to the TTAB's findings of fact or conclusions of law.

### III.

Arsa's opposition to Salud's trademark applications is based on Arsa's claims of priority in the EUCALIN mark and the likelihood of confusion that would result if Salud's applications were granted. As neither party contests the likelihood of confusion, the central question in this case is which party has priority in the EUCALIN mark. Salud contends that Salud has priority in the mark because Salud was the rightful owner of the mark during the 1999–2008 arrangement with Arsa and Salud has not since abandoned the mark. Arsa disputes the claim that Salud owned the mark from 1999–2008 and in any event, Arsa further claims that Salud has since abandoned the mark and, as a result, Arsa has become the rightful owner of the mark.

### A.

Rights to unregistered trademarks stem from priority of use of a valid protectable mark. *George & Co. v. Imagination Entm't Ltd.*, 575 F.3d 383, 400 (4th Cir. 2009). Priority of use accrues to the entity that first appropriates the mark for commercial gain. *Id.* In other words, the party asserting priority in a mark must be the first to use the mark in connection with the sale of goods or services, or at a minimum, demonstrate that it used the mark before the party against which it asserts its putative rights. *Id.* Priority in a mark, however, can be lost if the mark is abandoned. *Emergency One, Inc. v. Am. FireEagle, Ltd. (Emergency One I)*, 228 F.3d 531, 535–36 (4th Cir. 2000). As the Fourth Circuit has noted, "'[o]nce abandoned, a mark may be seized immediately and the person . . . doing so may' establish 'priority of use and ownership under the basic rules of trademark priority.'" *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*

(*Emergency One II*), 332 F.3d 264, 268 (4th Cir. 2003) (quoting 2 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, § 17:2 at 3 (4th ed. 2003)).

A trademark is abandoned "when its use has been discontinued with intent not to resume such use." 15 U.S.C. § 1127. Intent not to resume use can be inferred from a prolonged period of nonuse and that inference becomes stronger as the period of nonuse grows longer. *Emergency One I*, 228 F.3d at 540. Three consecutive years of nonuse is *prima facie* evidence of abandonment. 15 U.S.C. § 1127. In other words, three years of nonuse "creates a presumption—a mandatory inference of intent not to resume use." *Emergency One I*, 228 F.3d at 536 (citing *Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1025–26 (Fed. Cir. 1989)).

Here, there is no dispute that Salud has not used the EUCALIN mark in commerce for the past fifteen years, thereby triggering the presumption of abandonment. *See* 15 U.S.C. § 1127. Salud's prolonged period of nonuse—more than a decade beyond the statutory three-year presumption period—triggers a "strong inference of abandonment." *Emergency One I*, 228 F.3d at 540.

### B.

Because the presumption of abandonment has been triggered, Salud bears the burden of producing "evidence of intent to resume use within the reasonably foreseeable future." *Emergency One I*, 228 F.3d at 537. In certain circumstances, a trademark owner may alternatively avoid a finding of abandonment by establishing "special circumstances which excuse [its] nonuse." *Rivard v. Linville*, 133 F.3d 1446, 1449 (Fed. Cir. 1998). This memorandum opinion does not address the question of whether Salud has successfully rebutted the presumption of abandonment through a showing of intent to resume usage in the reasonably

foreseeable future. Resolution of that question requires resolution of facts that remain in dispute and that is what will be considered and resolved at the forthcoming bench trial. As a matter of law, however, it is clear that designation as an SDNT is not a special circumstance that would allow Salud to automatically avoid a finding of abandonment by converting its period of nonuse into an excusable period of nonuse.

Courts have found nonuse excusable "where there is a temporary, forced withdrawal from the market due to causes such as war, import problems, or some other involuntary action." *Emmpresa Cubana Del Tabaco v. Culbro Corp.*, 213 F.R.D. 151, 157 (S.D.N.Y. 2003) (collecting cases). Salud points to circumstances in which the United States Court of Customs and Patent Appeals ("C.C.P.A."), the predecessor to the Court of Appeals for the Federal Circuit, found nonuse to be excusable, such as Prohibition,[6] the Vietnam War,[7] business and economic reasons where the company was still actively promoting the product,[8] and a labor strike.[9] *See* Salud's Mem. in Supp. of its Mot. for Summ. J. at 16–17 (Dkt. 18) (quoting at length from the TTAB decision). Salud's cited cases, in addition to not being binding here,[10] are also clearly distinguishable because in those cases the reasons for nonuse were entirely beyond the control of

---

[6] *Kelly Liquor Co. v. Nat'l Brokerage Co.*, 102 F.2d 857 (C.C.P.A. 1939)

[7] *Am. Lava Corp. v. Multronics, Inc.*, 461 F.2d 836 (C.C.P.A. 1972)

[8] *Miller Brewing Co. v. Oland's Breweries (1971) Ltd.*, 548 F.2d 349 (C.C.P.A. 1976).

[9] *Sterling Brewers, Inc. v. Schenley Indus. Inc.*, 441 F.2d 675 (C.C.P.A. 1971).

[10] The cases cited by Salud are decisions by the C.C.P.A., the predecessor to the Court of Appeals for the Federal Circuit. Because trademark issues are not unique to the exclusive jurisdiction of the Court of Appeals for the Federal Circuit, the law of the Fourth Circuit, rather than the C.C.P.A. or Federal Circuit, applies here. *See, e.g., Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1326 (Fed. Cir. 1999) ("For areas of law, such as trademark and trade dress infringement, which are not unique to [the Federal Circuit's] jurisdiction," the law of the pertinent regional circuit applies.).

the party who was unable to use the mark. That is not true in this case. Prohibition and the Vietnam War, for instance, were outside the control of any company and were not the direct and foreseeable consequences of a trademark holder's actions or, as here, misdeeds. In those cases, the trademark holders were blameless for their nonuse; the nonuse occurred for reasons beyond the control of the nonuser. The same cannot be said for Salud.

Unlike the entities in the cases Salud cites, Salud's withdrawal from the market was not the result of external forces beyond Salud's control; rather, Salud brought the SDNT status and associated sanction of being barred from engaging in United States commerce on itself through very serious misconduct, namely involvement in drug trafficking conspiracy or operations. Salud was named a SDNT pursuant to the Kingpin Act because Salud facilitated narcotics trafficking. The detailed report of reasons for placing an individual or company on the SDNT list is classified and neither party has provided such a report or made specific representations as to what its contents would be. *See* 21 U.S.C. § 1903(d). However, to be included on the SDNT list, a person must be found to be

> (1) [m]aterially assisting in, or providing financial or technological support for or to, or providing goods or services in support of, the international narcotics trafficking activities of a specially designated narcotics trafficker; (2) [o]wned, controlled, or directed by, or acting for or on behalf of, a specially designated narcotics trafficker; or (3) [p]laying a significant role in international narcotics trafficking.

31 C.F.R. § 598.314.

According to OFAC, Salud was designated as a SDNT because it was part of the "financial and supply network" for the Amezcua Contreras Organization. *See* Treasury Dep't Press Release dated Oct. 2, 2008 (Dkt. 21-4). The Amezcua Contreras Organization created a "network of associates producing methamphetamines for distribution in the United States" and

9

controlled "a network of businesses in Mexico that supplies precursor materials for methamphetamine production." *Id.*

Although the precise details of Salud's misconduct are not available, the factual record makes clear that Salud has not faced the sorts of external forces—war, Prohibition—that have been found to be valid reasons for nonuse of the mark. Unlike the cases in which nonuse was found to be excusable, here it was within Salud's control to refrain from drug trafficking. Instead, Salud chose to take affirmative steps that contributed to the introduction of dangerous controlled substances in the United States. Salud brought the ban upon itself by participating as part of the "financial and supply network" that manufactured and purchased "multiple tons of pseudoephedrine-based cold medicines" that were "illicitly diverted to the Amezcua Contreras Organization." Treasury Dep't Press Release dated Oct. 2, 2008 (Dkt. 21-4). In response, the Department of Treasury understandably took measures that would limit Salud's ability to engage in United States commerce.

With the Kingpin Act, Congress intended to deny significant foreign narcotics traffickers and their operatives access to United States trade and the associated benefits. Salud suggests that, although designated an SDNT, Salud should be allowed automatically to preserve its trademark rights in the United States and not experience the consequences associated with prolonged nonuse. Accepting Salud's argument would weaken the force of the sanction Congress attached to the SDNT status. Congressional intent would be undermined if SDNTs were insulated as a matter of law from the negative effects stemming from nonparticipation in United States commerce. Congress prohibited SDNTs from dealing with United States businesses and persons and SDNTs must suffer the consequences associated with that congressionally imposed sanction.

Moreover, if Salud's argument were accepted, it would provide SDNTs with the ability to squat on marks without using them—a power law-abiding companies lack. As the Fourth Circuit noted in *Emergency One I*, requiring the purported owner of a trademark to use a mark in the reasonably foreseeable future ensures that valuable trademarks are used in commerce as the Lanham Act intends, rather than simply hoarded or warehoused. 228 F.3d at 537. Salud's reasoning would create a precedent whereby SDNTs do not need to use or show intent to use trademarks in order to indefinitely warehouse the marks and prevent others from using them in United States trade. Meanwhile, a non-SDNT who failed to use its mark would, as the Lanham Act intended, have to show its intent to use its mark in order to maintain the mark. Put differently, ruling as Salud desires would give narcotics traffickers a "free pass" for nonuse, while other companies that had not engaged in narcotics trafficking would be required to meet the use or intent-to-use requirements of the Lanham Act.

In sum, Salud's request to be excused from the use or intent-to-use requirements of the Lanham Act is unsupported by its cited caselaw and granting Salud's request would create perverse incentives and undermine the use of valuable trademarks in the United States. For these reasons, Salud's arguments must be rejected. Even though Salud was designated an SDNT, Salud still must show it intended to use the mark in the reasonably foreseeable future during the entire period of its nonuse of the EUCALIN mark.

### IV.

As a matter of law, Salud's designation as an SDNT does not constitute excusable nonuse, but questions of fact remain as to Salud's intent to resume use of the mark during the period of nonuse. While there may be circumstances in which the presence of external forces helps a party avoid a determination of abandonment, here Salud's status as an SDNT cannot on

its own save Salud's trademark applications. Salud, however, may alternatively rebut the statutory presumption of abandonment by establishing that it had formed an intent to resume use in the reasonably foreseeable future during its period of nonuse. In so doing, Salud must assert more than a "vague, subjective intent to resume use of a mark at some unspecified future date." *Emergency One I*, 228 F.3d at 537. When rebutting the presumption, Salud has the burden the burden of production, while the burden of persuasion remains with Arsa. *See id.* at 536. The parties dispute whether Salud has produced evidence to establish that it intended to use the mark in the United States in the reasonably foreseeable future. A bench trial is necessary to resolve this dispute. Additionally, to prevail, Salud must establish that Salud has priority in the mark by virtue of Salud's 1999–2008 arrangement with Arsa. This too is disputed and will be resolved in the forthcoming bench trial. While this memorandum opinion alters the landscape for analysis, the conclusions laid out here do not obviate the need to clarify the factual record.

### V.

Salud also seeks summary judgment on all claims that Arsa brings against Salud. *See* Salud's Mot. for Summ. J. (Dkt. 17). The analysis provided in this memorandum opinion remains the same when considering the facts in the light most favorable to Arsa. For the reasons noted *supra*, Salud's motion for summary judgment on Arsa's claims must be denied.

Salud also requests that, should Salud's motion for summary judgment for priority in the EUCALIN mark be granted, that Salud's counterclaim against Arsa for violations of Section 43(a) of the Lanham Act also be granted. *See* Salud's Mem. in Supp. of its Mot. for Summ. J. at 19 (Dkt. 18). Given that Salud's motion for summary judgment for priority in the EUCALIN mark must be denied, this memorandum opinion need not reach the merits of Salud's counterclaim.

## VI.

In conclusion, Arsa's motion for summary judgment must be granted as to the question of whether Salud's status as a SDNT constitutes excusable nonuse sufficient to negate the presumption of abandonment for any period of Salud's nonuse. The parties' motions must be denied in all other respects as there remain genuine issues of material fact.

Accordingly, the issues that remain for resolution at the bench trial include the following:

(1) which party had priority in the EUCALIN mark during the 1999–2008 arrangement between Arsa and Salud in which Salud manufactured the EUCALIN product and Arsa sold the EUCALIN product in the United States;

(2) whether Salud maintained an intent to resume use of the EUCALIN mark in the reasonably foreseeable future during the entire period of Salud's nonuse of the EUCALIN mark;

(3) whether Arsa failed to use the EUCALIN product in United States commerce from 2018 through 2020 and, assuming Arsa had priority in the mark after 2008, whether Arsa abandoned the EUCALIN mark as a result; and

(4) whether Arsa has, as Salud claims, used false designation of origin and false representations in connection with the sale of the EUCALIN mark.

An appropriate Order will issue. The Clerk is directed to send a copy of this memorandum opinion to all counsel of record.

Alexandria, Virginia
November 6, 2023

/s/
T. S. Ellis, III
United States District Judge

13